408 S.E.2d 321

**Lilirose SIAS, Administratrix of the Estate of Gerry Sias, Deceased; Hollie Smith and Merry Smith; and John Starr and Brenda Starr, Plaintiffs Below, Appellants,**

v.

**W–P COAL COMPANY, Defendant Below, Appellee.**

No. 19672.

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided July 19, 1991.

Bradley J. Pyles, Grant Crandall, Perry D. McDaniel, Crandall & Pyles, Logan, for appellants, Lilirose Sias, Administratrix, and Hollie Smith and Merry Smith.

William S. Steele, Preiser Law Offices, Charleston, for appellants, John Starr and Brenda Starr.

Anita R. Casey, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, E. Forrest Jones, Albertson & Jones, Charleston, for appellees.

McHUGH, Justice:

This consolidated appeal by the plaintiffs from a judgment notwithstanding the verdict involves the "deliberate intention" statutory exception to employer immunity from work-related tort liability to employees under the West Virginia Workers' Compensation Act, specifically, *W.Va.Code*, 23–4–2(c)(2)(ii) [1983, 1991].[1] We believe the trial court, the Circuit Court of Logan County, West Virginia, improperly granted the defendant's motion for judgment notwith-

**1.** The events in this case occurred before the 1991 amendment to *W.Va.Code*, 23–4–2. The 1991 amendment did not result, however, in any substantive changes, but only stylistic changes in subsections (a) and (c)(1). The 1983 and 1991 versions of *W.Va.Code*, 23–4–2(c)(2) are set forth in note 3 *infra*.

standing the verdict on the issue of liability, for the reasons stated in this opinion. Therefore, we reverse the judgment on the issue of liability, reinstate the jury verdict in favor of the plaintiffs on that issue and remand this case for trial on the issue of damages.[2]

## I

On November 3, 1983, during the evening shift, a coal outburst ("mountain bump") occurred at the coal mine in question in Logan County, West Virginia, owned by W–P Coal Company, the defendant-appellee ("the coal operator" or "the employer"). At least two employees were injured; the "roadway" in the mine was covered with expelled coal; mine timbers were broken; and equipment was ordered moved to prevent damage to it from anticipated roof falls in the area. The outburst was reported to the section foreperson, to his supervisor and to the main office. It was established that at least one of the injured employees' workers' compensation application forms was reviewed and approved by the coal operator's management. Miners had withdrawn (fled) from the area and production had ceased for one and one-half to two hours.

On the morning after the November 3, 1983 coal outburst, virtually the entire chain of command inspected the area: the manager of the coal operator's mines, the manager of the mine in question, the day shift foreperson and the evening shift foreperson. Although the coal outburst was an "accident" required explicitly to be reported immediately under federal regulations, 30 *C.F.R.* §§ 50.2(h)(9), 50.10 (1990), the coal operator did not report this "accident."

Coal outbursts are caused by severe pressure from heavy overburden on pillars, especially where the overlying strata and the floor of the mine are made of thick, hard rock, thereby building up pressure and transferring it to the pillars. Unless the roof falls or the floor heaves to release the pressure, eventually the pillars release the pressure by exploding. The built-up pressure is usually indicated by "bumping" sounds.

After the November 3, 1983 coal outburst, no significant roof falls occurred to release the pressure. Management suddenly changed plans and, instead of removing the remainder of the row of pillars in question as part of retreat mining, began to mine "rooms" somewhat far to the right. Even after this change, no significant roof falls occurred to release the pressure on the remaining pillars in question. In addition, this mining in the rooms to the right *exacerbated* the problem by transferring more weight and pressure to the row of pillars in question. Ordinarily, in moving from "inby" (deep in the mine) to "outby" (toward the mouth of the mine) during "retreat" mining, the pillar recovery sequences would occur continuously in one general direction, such as left to right, which would transfer the weight and pressure in one direction (to the right) away from the miners (to the unmined area). Here, by temporarily ceasing the continuous left to right sequence, shifting to the rooms to the right and then coming back to the middle area in question, the weight and pressure from more than one direction (left *and* right) were transferred back to the *middle* area containing the row of pillars in question.

On November 28, 1983, management decided to go back and "recover," or extract, the remainder of the row of pillars in question, even though no significant roof falls had occurred in the area to release the pressure; timbers *between* pillars were broken; excessive "sloughing" of coal on the sides of the pillars had occurred; and numerous unusual "bumping" sounds had occurred in the area. In addition, visual inspection disclosed that the roof had severely "bellied" down in the area of these pillars. The miners expressed their reluctance to work in the area but were directed to proceed.

On November 29, 1983, as the last two of these pillars were being extracted, a violent coal outburst occurred at the site, exactly

2. The trial court had bifurcated the trial of the liability and damage issues by submitting the case initially to the jury solely on the issue of liability.

one row of pillars (at the same point in the row) from ("outby") the site of the November 3, 1983 coal outburst. The force of the outburst threw Gerry Sias into a roofbolting machine, a projecting bar of which pierced his skull; he died three days later. The outburst also completely severed Hollie Smith's leg and threw a twenty-six ton continuous miner machine fifteen to twenty feet onto John Starr, crushing his legs and fracturing his ribs. Two other miners were less seriously injured.

The coal operator never mentioned to federal and state inspectors the November 3, 1983 coal outburst at almost the same site as the November 29, 1983 outburst.

The plaintiffs-appellants, the administratrix of the estate of Gerry Sias, as well as Hollie Smith and his wife and John Starr and his wife, brought these civil actions, consolidated for trial, against W–P Coal Company under the "deliberate intention" statutory exception to employer immunity from work-related tort liability to employees, *W. Va. Code*, 23–4–2(c)(2)(ii) [1983, 1991].[3] The trial court denied the coal operator's motions for directed verdict made at the close of the plaintiffs' case and renewed at the close of all of the evidence.

The jury returned a verdict on liability in favor of the plaintiffs. The jury answered in the affirmative special interrogatories as to the existence of each of the five elements required by the relevant portion of the "deliberate intention" statute.

The coal operator timely moved for judgment notwithstanding the verdict. The trial court granted that motion. The trial court found that the plaintiffs had failed to establish three of the five required elements: (1) a *specific* unsafe working condition; (2) subjective realization; and (3) intentional exposure.

## II

An employee who sustains a work-related personal injury ordinarily recovers "compensation" for that injury in the form of statutory workers' compensation only, when the employee's employer is either (1) subject to the Workers' Compensation Act and is current in payments into the workers' compensation fund or (2) is "self-insured," that is, elects to and does make direct payments under its own sys-

**3.** The language of *W. Va. Code,* 23–4–2(c)(2) [1983], effective at the time of the incident at issue in this case, was as follows:

(2) The immunity from suit provided under this section and under section[s six and] six–a, article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with 'deliberate intention.' This requirement may be satisfied only if:

(i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

The 1991 version of this part of this statute is identical.

tem of compensation, at least equivalent to workers' compensation, approved by the workers' compensation commissioner. In either of these situations such a "contributing" employer ordinarily is immune from common-law liability for a work-related employee's personal injury or death. *W.Va. Code*, 23–2–6 [1974, 1991]; *W.Va.Code*, 23–4–2(c)(1) [1983, 1991].[4] However, this immunity is lost if the employee's personal injury or death resulted from the "deliberate intention" of the employer to produce such injury or death. In that case the employer is liable in a civil action for any excess damages over the amount of workers' compensation paid on behalf of the employee. *W.Va.Code*, 23–4–2(b) [1983, 1991]. We stated in syllabus point 1 of *Mayles v. Shoney's, Inc.* that: "The statute creating a legislative standard for loss of employer immunity from civil liability for work-related injury to employees found in W.Va.Code 23–4–2 (1983) essentially sets forth two separate and distinct methods of proving 'deliberate intention.'" This statement was based on the fact that *W.Va. Code*, 23–4–2(c)(2)(i) contains one theory and *W.Va.Code*, 23–4–2(c)(2)(ii) outlines a second method of establishing liability. The two subsections are separated by the disjunctive "or."

In this case, as in *Mayles v. Shoney's, Inc.*, we deal with the second method of proof contained in *W.Va.Code*, 23–4–2(c)(2)(ii)(A)–(E) [1983, 1991], *see supra* note 3. Paraphrased, these five elements are: (1) a specific unsafe working condition with a strong probability of serious injury or death; (2) subjective realization and appreciation of that condition by the employer; (3) that condition was a violation, whether cited or not, of a specifically applicable federal or state safety statute or regulation or of a commonly accepted and specifically applicable safety standard in the employer's type of business or indus-try; (4) intentional exposure by the employer of the employee to that specific unsafe working condition subjectively realized and appreciated by the employer; and (5) such exposure to that condition proximately caused the serious injury or death of the employee.

■ This Court recently discussed these five elements under the 1983 version of the "deliberate intention" statute. In syllabus point 2 of *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), we held that: "A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W.Va.Code 23–4–2(c)(2)(ii) (1983)." We now examine the evidence in the present case on each of these five elements.

## SPECIFIC UNSAFE WORKING CONDITION

■ The first element is a specific unsafe working condition with a strong probability of serious injury or death. The trial court found, upon the employer's motion for judgment notwithstanding the verdict, that there was only a *general* unsafe working condition here, that is, a mining condition faced generally by miners in underground coal mines. This finding of the trial court, contrary to the jury's finding in its answers to the special interrogatories, is clearly wrong. The trial court's finding is undermined by the citation issued to the employer for the November 29, 1983 coal outburst by the Federal Mine Safety and Health Administration ("MSHA"). That citation was for a faulty pillar recovery method causing a coal outburst, in violation of a federal (MSHA) regulation applicable specifically to this safety concern. This regulation is designated now as 30 *C.F.R.* § 75.203(a) (1990).[5]

4. The 1991 amendments to *W.Va.Code*, 23–4–2 were technical. The term "workers' compensation" was substituted for "workmen's compensation." The term "division of energy" was substituted for "state department of mines."

5. Moreover, if this working condition was a general, relatively common one, subjective realization would necessarily follow; the trial court, however, found there was no subjective realization here by the employer.

## SUBJECTIVE REALIZATION

■ The second element is the key element of the employer's subjective realization and appreciation of the specific unsafe working condition and of the strong probability of serious injury or death. The trial court, contrary to the jury, found that this element was not shown. Subjective realization, like any state of mind, must be shown usually by circumstantial evidence, from which, ordinarily, conflicting inferences reasonably can be drawn. Several facts support the jury's finding of subjective realization in this case: (1) the prior similar incident, specifically, the coal outburst at almost the same location on November 3, 1983, of which the employer was aware; (2) the lack of any significant, pressure-releasing roof falls thereafter in the area in question; (3) visual and audible signs of extraordinary pressure on the row of pillars in question, e.g., the "bellying" down of the roof, "sloughing" of coal on the sides of the pillars and "bumping" sounds; (4) complaints, albeit informal, by employees prior to the incident in question on November 29, 1983, concerning their apprehension of another coal outburst; (5) the congregation of several upper level supervisors on the day after the November 3 outburst; and (6) the sudden, temporary move from the row of pillars in question to the rooms to the right. These and other facts support the jury's finding that the employer actually was aware of and appreciated the seriousness of the dangerous condition existing in the row of pillars in question.

## VIOLATION OF SAFETY STANDARD

■ The third element is the violation of a safety standard specifically applicable to the type of problem at issue. The trial court agreed with the jury's finding that this element was established here. As discussed previously under the element of a specific unsafe working condition, the employer was cited by MSHA for this incident

of violating what is now designated as 30 C.F.R. § 75.203(a) (1990).[6]

## INTENTIONAL EXPOSURE

■ The fourth element is the intentional exposure by the employer of the employee to the specific unsafe working condition which was in violation of a specific safety standard and which the employer subjectively realized and appreciated. In other words, this element, which is linked particularly with the subjective realization element, is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent. The trial court disagreed with the jury's finding that this element of intentional exposure was shown in the present case.

The employer's specific intent to *injure* the employee is not required to be established under this intentional *exposure* element, *W. Va. Code*, 23–4–2(c)(2)(ii)(D) [1983, 1991]. The fact finder, under this five-element test, reasonably may infer the intentional exposure if the employer acted with the required specific knowledge ("subjective realization" and appreciation of a specific unsafe working condition violative of a specific safety standard) and intentionally exposed the employee to the specific unsafe working condition. *Handley v. Union Carbide Corp.*, 620 F.Supp. 428, 439 (S.D. W.Va.1985) (Haden, C.J.), *aff'd*, 804 F.2d 265 (4th Cir.1986) (Sprouse, J., writing for three-judge panel).

■ Here, after mining temporarily in the rooms to the right of the row of pillars in question, the employer had options. It could have: (1) ceased mining in the area in question until a significant, pressure-releasing roof fall; or (2) left several pillars as a buffer, thereby, however, losing the coal production from those pillars; or (3) returned to the pillar line in question and extracted the coal in each pillar despite the known risk of a coal outburst. The employer deliberately chose the last option. From this evidence the jury reasonably

---

**6.** *See also* 30 *C.F.R.* § 75.202(a) (1990) (roof, face and ribs of areas where persons work or travel shall be supported or otherwise con-

trolled to protect persons from hazards related to falls of roof, face or ribs and coal or rock outbursts).

could find intentional exposure of the employees by the employer.

## PROXIMATE CAUSE

▉ The fifth and final element is that of the intentional exposure of the employee to the specific unsafe working condition violative of a specific safety standard and subjectively realized and appreciated by the employer constituting the proximate cause of the employee's serious injury or death. The trial court found that proximate cause *per se* was established in this case, and the employer never contested the element of proximate cause in the sense utilized by the trial court that the work exposure itself was the proximate cause of each employee's serious or fatal injury. The jury's finding in its answer to the special interrogatory on this element to the effect that the existence of the other four elements was the proximate cause of the serious injuries and fatality in the present case was supported sufficiently by the evidence viewed, as it must be, in the light most favorable to the plaintiffs, in whose favor the jury returned its verdict (on the issue of liability).[7]

## III

This Court is aware of the statutory language, *W.Va.Code*, 23–4–2(c)(2)(iii)(B) [1983, 1991], indicating legislative intent that there be "prompt judicial resolution" of "deliberate intention" actions against employers, in appropriate cases, by granting employers' motions for summary judgment or for a directed verdict. Under that part of the statute, such motions are to be granted when, pursuant to Rule 56(c) of the *West Virginia Rules of Civil Procedure*, one or more of the five elements of *W.Va.Code*, 23–4–2(c)(2)(ii)(A)–(E) [1983, 1991] do not exist (motion for summary judgment) or when, after considering all of the evidence and every reasonable inference in the light most favorable to the plaintiff, there is insufficient evidence to find each and every one of the aforestated five elements (motion for a directed verdict).[8]

The court applied this statutory language in *Handley v. Union Carbide Corp.*, 620 F.Supp. 428 (S.D. W.Va.1985) (Haden, C.J.), *aff'd*, 804 F.2d 265 (4th Cir.

---

**7.** *See infra* section III of this opinion for a discussion of the standards for determining the sufficiency of the evidence and for ruling on a motion for judgment notwithstanding the verdict in a "deliberate intention" action against an employer.

The jury reasonably resolved the conflicts in the evidence in favor of the plaintiffs, including those on (1) whether coal outbursts had occurred in Logan County prior to November, 1983, and (2) whether safety inspections of the mine by regulators shortly prior to the time in controversy, which did not disapprove of the pillar recovery method employed here, were of the *specific area in question*. The employer had raised these points at trial to show the lack of subjective realization and appreciation.

On that same element the employer's argument that the prior approvals of roof control plans by regulators indicated a lack of subjective realization is unavailing as a matter of law. Such approvals several months in advance of this incident did not authorize the employer's management to ignore clear evidence of extraordinary pressure on the row of pillars in question. *See* 30 *C.F.R.* § 75.233(a)(1)–(2) (1990) (requiring coal operator to propose revisions of roof control plan when conditions indicate that existing plan is not suitable for controlling, *inter alia*, coal outbursts or when acci-

dent and injury experience at mine indicates plan is inadequate).

**8.** The relevant language of *W.Va.Code*, 23–4–2(c)(2)(iii) [1983, 1991] is as follows:

(iii) In cases alleging liability under the provisions of the preceding paragraph (ii):

. . . .

(B) Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote *prompt judicial resolution* of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it shall find, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist, and the court shall dismiss the action upon a timely motion for a directed verdict against the plaintiff if after considering all the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court shall determine that there is not sufficient evidence to find each and every one of the facts required to be proven by the provisions of subparagraph (A) through (E) of the preceding paragraph (ii)[.]

(emphasis added)

1986) (Sprouse, J., writing for three-judge panel). Chief Judge Haden in *Handley* rejected the employer's argument there that this language of the "deliberate intention" statute changed the existing procedural law by allowing a defendant employer to move successfully for a judgment notwithstanding the verdict with "a lesser showing" than under preexisting procedural law. 620 F.Supp. at 432. While a plaintiff's burden has been made more specific by the 1983 amendment to the statute adding the five-element test for "deliberate intention," the more specific burden on the plaintiff is "imposed substantively rather than procedurally." *Id.* That is,

> [t]he 'sufficiency [of the evidence] test' cannot [properly] be said to have changed; rather, it is the nature of the evidence to which the test will be applied which has changed. In other words, because a [plaintiff under *W.Va.Code,* 23–4–2(c)(2)(ii)(A)–(E) [1983, 1991] will] have to prove five ... narrowly drawn elements, directed verdicts and judgments n.o.v. may be appropriate more frequently.

620 F.Supp. at 432. *See also Beard v. Beckley Coal Mining Co.,* 183 W.Va. 485, 488, 396 S.E.2d 447, 450 (1990) (under *W.Va.Code,* 23–4–2(c)(2)(ii) [1983], it was employer's burden to show that there was no genuine issue of material fact with regard to five requirements of that statute, in order to succeed on its motion for summary judgment).

▪ Consistent with the foregoing, this Court holds that the portion of the statute which authorizes "prompt judicial resolution" of "deliberate intention" actions against employers, specifically, *W.Va. Code,* 23–4–2(c)(2)(iii)(B) [1983, 1991], relates to plaintiffs' more specific substantive law burden under the five-element test of *W.Va.Code,* 23–4–2(c)(2)(ii)(A)–(E) [1983, 1991], but the preexisting procedural law still applies for granting employers' motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

▪ The preexisting procedural law on motions for judgment notwithstanding the verdict pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* was summarized in *McClung v. Marion County Commission,* 178 W.Va. 444, 360 S.E.2d 221 (1987).[9] A motion for judgment notwithstanding the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is sufficient conflicting evidence, or insufficient evidence to establish conclusively the movant's case, judgment notwithstanding the verdict should not be granted. In considering the motion, the trial court and the appellate court must view the evidence in the light and with all reasonable inferences most favorable to the party who secured the jury's verdict. *Id.* 178 W.Va. at 453, 360 S.E.2d at 230–31.

▪ A motion for judgment notwithstanding the verdict pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* provides the trial court with an opportunity, after the jury has been discharged, to reconsider its previous refusal to grant a motion for a directed verdict pursuant to

9. *W.Va.R.Civ.P.* 50(b) states:

> (b) *Motion for judgment notwithstanding the verdict.*—Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his [or her] motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his [or her] motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

Rule 50(a) of those *Rules* made at the close of all of the evidence. The same factors as to the sufficiency of the evidence which are examined in deciding a motion for a directed verdict apply also when ruling upon a motion for a judgment notwithstanding the verdict. *Id.* 178 W.Va. at 453, 360 S.E.2d at 231. Accordingly, as held in syllabus point 7 of *McClung*, "[i]n a case where the evidence is such that the jury could have properly found for either party upon the factual issues, a motion for judgment notwithstanding the verdict should not be granted." *Accord, Morgan v. Bottome,* 170 W.Va. 23, 24, 289 S.E.2d 469, 470 (1982). Stated in a similar manner, a trial court, on a motion for judgment notwithstanding the verdict, is not entitled to substitute its opinion for the opinion of the jury on evidence giving rise to inferences about which reasonable minds could differ. *McClung,* 178 W.Va. at 453, 360 S.E.2d at 231.

■ Finally, the action of a trial court in setting aside a jury verdict, while entitled to peculiar weight on appeal, will, nevertheless, be reversed where a consideration of all of the evidence clearly shows a proper case for jury determination. *Id.* 178 W.Va. at 453, 360 S.E.2d at 231. *See* syl. pt. 1, *Utter v. United Hospital Center, Inc.,* 160 W.Va. 703, 236 S.E.2d 213 (1977).

■ As demonstrated above in section II of this opinion, this consolidated action was "a proper case for jury determination" of the existence *vel non* of each of the three elements for showing "deliberate intention" which the trial court in this case found was lacking upon the employer's motion for judgment notwithstanding the verdict.

Accordingly, we reverse the trial court's judgment on the issue of liability, reinstate the jury verdict in favor of the plaintiffs on that issue and remand this case with directions to enter judgment in accordance with the verdict on the issue of liability and to conduct a trial on the issue of damages.

Reversed and remanded.