**Harold GRANT and Narnie Grant, his wife, Plaintiffs,**

**v.**

**MONSANTO COMPANY, a Delaware corporation, Defendant.**

Civ. A. No. 2:92–0388.

United States District Court,
S.D. West Virginia,
at Charleston.

Sept. 23, 1993.

Stuart Calwell, Calwell & McCormick, Charleston, WV, for plaintiffs.

Charles M. Love, III, Fazal A. Shere, Phyllis M. Potterfield, Bowles, Rice, McDavid, Graff & Love, Phyllis N. Potterfield, Charleston, WV, for defendant.

### MEMORANDUM ORDER

TAYLOR, United States Magistrate Judge.

This matter comes before the Court on plaintiffs' motion seeking an order requiring

defendant to produce documents identifying persons participating in the PAB (para-aminobiphenyl) Plan, as well as documents "showing the criterion which were used in identification of individuals who were candidates for participation in the PAB program." The issues raised have been the subject of a hearing before the Court and have been briefed by the parties. Nothing further remaining, the matter is ripe for decision.

Harold Grant filed this action [1] against Monsanto Company (hereinafter "Monsanto") asserting that he developed bladder cancer in March of 1990 as a consequence of his exposure to para-aminobiphenyl or "PAB" during the years he worked around the chemical at Monsanto's Nitro, West Virginia plant.[2] In the complaint, Mr. Grant has alleged that during the course of his employment he was exposed to the hazards of PAB, that Monsanto had a subjective realization of the dangers of PAB at least by October of 1953 and that the company acted with deliberate intent in continuing to expose him to PAB in the work place "in violation of contemporary, commonly accepted and well known safety standards applicable to the use of and exposure to, known, potent bladder carcinogens." Mr. Grant asserts that Monsanto's conduct, as alleged, directly and proximately resulted in the development of his bladder cancer in March of 1990.

As described in defendant's supplemental memorandum filed in opposition to plaintiffs' motion to compel,[3] PAB was a chemical used in the production of a rubber additive, Ajone–C, at defendant's Nitro plant. In the early 1950's, Monsanto's medical director, Dr. R. Emmet Kelly, "first suspected a possible link between PAB and the development of bladder tumors" and immediately thereafter "Monsanto voluntarily started the 'PAB Program'...." Under this program, "past and current employees who had worked with PAB were contacted and informed that PAB was suspected to be a bladder carcinogen ... and were medically examined by cystoscope ... or by biannual urine cytology (pap test) when that procedure became available...." The monitoring program has continued to the present day and is available to "any Monsanto employee who worked at the Nitro plant in Building 34 or who otherwise thought he was possibly exposed to PAB and wanted to participate in the PAB Program...." The use of PAB in the Ajone–C process at Nitro "stopped on or before July 1, 1955," and, presumably, only employees who worked on or prior to that date participated in the program. In any event, it is identifying information with respect to these program participants which plaintiffs seek by their request for production and motion to compel. Defendant raises various objections to production, arguing, as an initial matter, that the "identification is irrelevant to the viable legal issues in this case."

As Judge Copenhaver pointed out in his March 25, 1993 Memorandum Order denying defendant's motions to dismiss and for summary judgment, "plaintiffs are attempting to recover ... under a statutory exception to the immunity from suit provisions of West Virginia's Worker's Compensation laws which lifts the immunity "if the employer acted with deliberate intent in bringing about the plaintiff's injuries and the plaintiff is able to prove the specific statutory requirements under W.Va.Code, § 23–4–2(c)(2)." Thus, in order to establish liability,[4] plaintiffs must, *inter alia*, produce evidence of "a specific unsafe working condition with a strong probability of serious injury or death;

1. A loss of consortium claim by Mrs. Grant is also set forth in the complaint.

2. Mr. Grant worked at Monsanto's chemical plant in Nitro from 1949 to 1981.

3. Background information submitted by the parties on the present motion was, understandably, not exhaustive, and, in ruling on the motion to compel, the Court has also taken account of the evidence submitted by the parties as described by Judge Copenhaver in *Smith v. Monsanto Company*, 822 F.Supp. 327 (S.D.W.Va.1992). In his order of March 24, 1993, denying defendant's motion for summary judgment, Judge Copenhaver notes that Monsanto "adopted by reference, without further elaboration, its motion for summary judgment and memorandum in support filed in *Smith v. Monsanto Company*...." Counsel representing the parties in the *Smith* case also represent the parties in the present action.

4. In this case, plaintiffs seek to prove "deliberate intention" by means of the five-part test set forth in § 23–4–2(c)(2)(ii).

... subjective realization and appreciation of that condition by the employer; ... [and,] intentional exposure by the employer of the employee to that specific unsafe working condition subjectively realized and appreciated by the employer...." *Sias v. W–P Coal Company*, 185 W.Va. 569, 408 S.E.2d 321, 326 (1991). Without attempting exhaustion of the issues to which the evidence sought would be relevant, the Court notes that evidence that other employees "sustained ... serious injury or death as a result of exposure," *Yeater v. Allied Chemical Company*, 755 F.Supp. 1330, 1338 (N.D.W.Va.1991),[5] is relevant in determining whether there existed at the Nitro plant a specific unsafe working condition with a strong probability of serious injury or death. Evidence of symptoms or disease occurring in employees exposed to PAB—which the records may describe—would also be relevant to the issue of the employer's subjective realization and appreciation of that condition. Employees participating in the PAB program are, of course, a source, possibly the best source, of information concerning effects experienced by Monsanto's employees exposed to PAB, and documents identifying these employees would identify individuals having relevant information. Under such circumstances, the relevancy of the documents sought seems apparent.

█ Defendant also argues that the documents are privileged, citing, in support of its position, cases decided in jurisdictions in which a physician-patient privilege exists. In the absence of recognition of a physician-patient privilege under state law, *King v. Kayak Manufacturing Corporation*, 182 W.Va. 276, 387 S.E.2d 511 (1989), however, there is simply no basis for asserting immunity from discovery in this diversity action.

█ Finally,[6] defendant objects to revealing the identity of PAB participants "based on their inherent right to privacy and interest in avoiding disclosure of personal matters," citing decisions of the Supreme Court of Appeals of West Virginia recognizing the existence of a right of privacy and a cause of action for invasion of that right.[7] Beyond compelling sensitivity in the exercise of its discretion when considering the issue of discovery of records identifying individuals participating in a program involving their physical condition, possible risk for development of bladder cancer or treatment for bladder cancer, the Court does not find helpful cases recognizing a right under West Virginia law for invasion of privacy in the context of a requirement by employers that employees submit to polygraph tests,[8] examination of a customer's shopping bags by supermarket employees,[9] and a landlord's installation of a listening device in his tenant's apartment.[10] In the Court's view, these acts, and similar conduct, simply cannot be equated with court ordered and supervised discovery in litigation between private parties. Nor are cases involving an attempt to obtain sensitive personal information by governmental agencies directly applicable in the context of discovery between private parties.[11] To the extent that

5. *See also, Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15, 22–23 (1990).

6. Defendant also objected on grounds that production would be "burdensome" and that the documents were protected by the attorney-client privilege and work-product immunity; however, no evidence was presented in support of these objections.

7. While the Court does not base its decision in this dispute on questions of standing, it is noted that defendant's assertion of privacy rights on behalf of its employees and former employees involves a certain ambivalence. Plaintiffs, of course, hope to secure evidence from the records sought which will be damaging to defendant's position in the litigation, and it appears that there is more than a remote possibility that they will be successful in this regard. Moreover, though given an opportunity, defendant has not

attempted to establish the manner in which the records sought were kept, protections in place for protecting their confidentiality or whether the employees were given an assurance of confidentiality in conjunction with their enrollment in the program.

8. *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984).

9. *Sutherland v. Kroger Company*, 144 W.Va. 673, 110 S.E.2d 716 (1959).

10. *Roach v. Harper*, 143 W.Va. 869, 105 S.E.2d 564 (1958).

11. Citing a number of cases involving governmental entities, defendant relies primarily on the decision of the Court in *United States v. Westing-*

Monsanto is asserting a constitutional right to privacy for the medical records being sought,[12] the Court need only note that the existence of such a right is highly questionable,[13] and that, even if a privacy right is assumed to exist for purposes of the present dispute, it is not absolute, "but rather involves a weighing of competing interests." *Sampson v. American National Red Cross,* 139 F.R.D. 95, 99 (N.D.Tex.1991), citing *Nixon v. Administrator of General Services,* 433 U.S. 425, 458–59, 97 S.Ct. 2777, 2797–98, 53 L.Ed.2d 867 (1977). Taking account of plaintiffs' substantial burden in this *Mandolidis*-type[14] action, of the fact that the information sought is clearly relevant and, perhaps, crucial to establishing a right of recovery under W.Va.Code § 23–4–2(c)(2)(ii), and believing that adequate safeguards, as set forth hereafter, protecting against improper disclosure can be established, the Court, weighing the interests involved, concludes that discovery of records providing the information sought should be allowed.[15] Accordingly, defendant shall produce "all documents" in its possession, identifying "individuals who were part of the PAB Program." Absent consent by the Court, disclosure will be limited to counsel for plaintiffs, experts retained by plaintiffs in anticipation of this litigation or preparation for trial, and participants in the PAB program. With respect to the latter category, only that particular participant's records shall be disclosed. Upon completion of all proceedings, such documents, and any copies made thereof, shall be returned to counsel for defendant. It is recognized that, at trial, the identity of some of the participants may, of necessity, become known; however, prior to trial the identity of participants will be treated by counsel as confidential and will be disclosed only as herein provided. Insofar as plaintiffs' motion seeks production of documents "showing the criterion which were used in the identification of individuals who were candidates for participation in the PAB program," counsel for defendant has responded to the request, and represented to the Court, that the only document responsive to the request has been produced.

Defendant shall respond as herein ordered within ten days from the date of entry of this Order.

---

*house Electric Corporation,* 638 F.2d 570 (3rd Cir.1980).

**12.** While defendant has not specifically asserted such a right, its reliance on *Westinghouse,* and similar decisions, raises the argument, at least by implication.

**13.** *See, Watson v. Lowcountry Red Cross,* 974 F.2d 482, 492 (4th Cir.1992) (J. Widener concurring); *Mason v. Regional Medical Center of Hopkins County,* 121 F.R.D. 300, 301–03 (W.D.Ky. 1988). Maintenance of the confidentiality of these records could not "be deemed 'fundamental' or 'implicit in the concept of ordered liberty'...." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973).

**14.** *See, Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (W.Va.1978).

**15.** Documents generated prior to cessation of the use of PAB would be relevant to elements of plaintiff's cause of action encompassed in subsections (A) and (B) and documents generated thereafter may establish that "a specific unsafe working condition existed ... which presented a high degree of risk and a strong probability of serious injury or death." W.Va.Code, 23–4–2(c)(2)(ii)(A), et seq.