# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Charles Redman, Administrator of
The Estate of Ruth McCreath,
Plaintiff Below, Petitioner**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0377** (Jefferson County 11-C-23)

**The Federal Group, Inc., doing business as
Clarion Hotel and Conference Center,
Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Charles Redman, Administrator of the Estate of Ruth McCreath, by counsel Anthony J. Majestro, appeals the order of the Circuit Court of Jefferson County granting summary judgment to Respondent, The Federal Group, Inc., doing business as the Clarion Hotel and Conference Center ("Clarion"). Clarion, by counsel Trevor K. Taylor, filed a response. Petitioner filed a reply. Petitioner argues that the circuit court erred in dismissing his deliberate intent action filed on behalf of Ms. McCreath who died as a result of burn injuries sustained when a deep fryer filled with hot cooking oil flipped over onto her.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural History

This appeal stems from the circuit court's grant of summary judgment for Clarion in petitioner's deliberate intent action. The circuit court ruled that petitioner could not establish, as a matter of law, all five required elements to prove "deliberate intention" under West Virginia Code § 23-4-2(d)(2)(ii).[1]

---

[1] Under West Virginia Code § 23-4-2(d)(2)(ii), petitioner must establish the following elements:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

1

On January 17, 2010, while employed in the kitchen of the Clarion in Shepherdstown, West Virginia, Ms. McCreath suffered ultimately fatal burns as a result of a deep fryer tipping over and spilling hot cooking oil onto her body. On the day of the injury, Ms. McCreath was making shells for taco salads in the deep fryer. Multiple employees witnessed Ms. McCreath standing in front of the fryer making the shells with no apparent problems approximately five to ten minutes before the incident. At some point, the fryer flipped forward, spilling 350 degree oil onto Ms. McCreath. No one was present in the kitchen with Ms. McCreath at the time of the incident.[2]

---

(B) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one [§23-4-1], article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

[2]The parties disputed what caused the fryer to flip forward. Petitioner alleged that Ms. McCreath told him that she slipped on the floor in front of the fryer and possibly grabbed the fryer on her way down. However, based on other employees' testimony as to what Ms. McCreath said at the time of the incident, Clarion asserted that Ms. McCreath got dizzy, fainted, and grabbed the fryer on her way down. Petitioner states in his brief that the kitchen was monitored by video surveillance and that Clarion's corporate representative admitted to viewing the recording after the incident. However, Clarion did not produce the videos during discovery. Clarion asserted in its response to interrogatories that there was nothing visible on the video because the cameras were either not operational or not aimed at the fryer. As a result of Clarion's failure to produce the video, the court ruled on August 22, 2012, that petitioner was entitled to an adverse inference instruction that would have allowed the jury to infer that Ms. McCreath slipped and fell in front of the fryer. The circuit court's treatment of the spoliated video is the subject of petitioner's last assignment of error.

After the incident, two Clarion employees came into the kitchen, picked up Ms. McCreath, and moved her to a chair by the door. Emergency medical technicians arrived about thirteen minutes later, removed Ms. McCreath's clothing that was soaked in hot oil, administered morphine in an effort to alleviate her pain, and transported her to the hospital. Because of the severe burns on over forty percent of her body, she was transferred to John Hopkins Bayview Burn Center, where she underwent several surgeries. She died from her injuries about one month later, on February 17, 2010.

The deep fryer that flipped over was located in a line of cooking equipment with its back against a wall. To the left of the fryer was a second identical fryer. To the right was a griddle. The fryers were installed on legs against the wall, but were not connected to each other, were not restrained with anchor straps, and were not connected to the floor. There was no chain on the back of the fryer to limit its movement. In addition, at the time of the incident, there was no mat on the floor in front of the fryer.

Petitioner, as administrator of Ms. McCreath's estate, filed the instant action against Clarion, as well as the manufacturer and installer of the fryer. Following discovery, petitioner settled with the defendants other than Clarion. Clarion filed its motion for summary judgment on the pending deliberate intent claim and the circuit court conducted a hearing thereon on December 31, 2012. On January 8, 2013, the court entered a brief order granting the motion, noting that a full order with findings and conclusions would follow. On February 6, 2013, the court entered a second order granting Clarion's motion for summary judgment with findings of fact and conclusions of law. The court ruled that petitioner could not establish at least three of the five elements required to prove deliberate intent.

Specifically, the circuit court found that petitioner failed to produce sufficient evidence that Clarion "had actual knowledge" of the specific unsafe working condition. *See* W.Va. Code § 23-4-2(d)(2)(ii)(B). In its order, the court reasoned that while Clarion may have had knowledge that the fryer was not restrained or that it was capable of tipping over when moved, this circumstantial evidence did not amount to actual knowledge of an unsafe condition. The court found that prior to the incident, there were no complaints or maintenance issues regarding the stability of the fryer, nor were there any injuries from the fryer. The court also rejected petitioner's assertion that Clarion should be barred from denying actual knowledge on the grounds that it failed to conduct a "hazard assessment" pursuant to federal regulation, 29 C.F.R. § 1910.132.[3] In this respect, the court ruled that no hazard assessment was required because the regulation applies to providing "personal protective equipment," and was therefore not applicable to the facts in this case.

Second, the circuit court found that petitioner failed to produce sufficient evidence that the alleged specific unsafe condition violated a state or federal safety statute, rule or regulation,

---

[3]29 C.F.R. § 1910.132 states, in part, that "[t]he employer shall verify that the required workplace hazard assessment has been performed through a written certification that identifies the workplace evaluated; the person certifying that the evaluation has been performed; the date(s) of the hazard assessment; and, which identifies the document as a certification of hazard assessment."

or commonly accepted and well-known safety standard within Clarion's business. *See* W.Va. Code § 23-4-2(d)(2)(ii)(C). Petitioner contended that Clarion's failure to restrain the fryer violated 29 C.F.R. § 1910.212(b), which states that "[m]achines designed for a fixed location shall be securely anchored to prevent walking or moving," and that Clarion's lack of a slip-resistant mat in front of the fryer violated 29 C.F.R. § 1910.22(a)(2), which states that "[t]he floor of every workroom shall be maintained in a clean and, so far as possible, a dry condition. Where wet processes are used, drainage shall be maintained, and false floors, platforms, mats, or other dry standing places should be provided where practicable." Petitioner also argued that Clarion allowed the fryers to be operated in violation of the warnings in their operations manual and on their doors that, generally speaking, caution against use without tipping restraints.

The circuit court noted that the United States Occupational Safety and Health Administration ("OSHA") investigated the incident and found no violation of safety regulations. Looking at the specific regulations cited by petitioner, the circuit court found them inapplicable. The court determined that 29 C.F.R. § 1910.212(b) is meant to apply to machines such as guillotine cutters, shears, alligator shears, power presses, milling machines, power saws, jointers, portable power tools, forming rolls, calendars, and fan blades. To the circuit court, the regulation was not applicable to deep fryers or to the commercial kitchen industry. As for 29 C.F.R. § 1910.22(a)(2), the circuit court found that the individuals working with Ms. McCreath on the day of the incident testified that there was nothing wrong with the floor in front of the fryer – it was not slick. Additionally, the court noted that there were no mats in front of the fryers when OSHA investigated, and OSHA saw no violation as a result of their absence. As to the warnings in the fryer's manual and on its doors, the court looked to the manufacturer's representative, who testified that there was nothing wrong with Clarion's placement of the fryer against a wall and between other appliances.

Finally, based on its finding that Clarion lacked actual knowledge of an unsafe condition, the court found that "intentional exposure" to the same was logically impossible. *See* W.Va. Code § 23-4-2(d)(2)(ii)(D). The circuit court granted Clarion's motion for summary judgment and dismissed the case. Petitioner timely filed a Rule 59(e) of the West Virginia Rules of Civil Procedure motion to alter or amend the judgment, and after full briefing thereon, the court denied the motion on March 11, 2013. This appeal followed.

**Standard of Review**

This Court has recognized that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 4., *id.* To pierce the employer's immunity provided by the West Virginia Workers' Compensation Act, the plaintiff must establish either (1) the employer acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee, *See* W.Va. Code § 23-4-2(d)(2)(i), or (2) all five elements set forth in West Virginia Code § 23-4-2(d)(2)(ii), *supra.* The court must dismiss the action upon a motion for

4

summary judgment if it finds no genuine issues of material fact regarding the required elements. W.Va. R. Civ. Pro. 56; W.Va. Code § 23-4-2(d)(2)(iii)(B).

**Discussion**

On appeal, petitioner raises five assignments of error. First, petitioner argues that the circuit court erred by concluding that he failed to meet the "actual knowledge" requirement of West Virginia Code § 23-4-2(d)(2)(ii)(B). This Court has recognized that the determination of whether an employer had actual knowledge "requires an interpretation of the employer's state of mind, and must ordinarily be shown by circumstantial evidence, from which conflicting inferences may often be drawn." Syl. Pt. 2, in part, *Nutter v. Owens-Illinois, Inc.,* 209 W.Va. 608, 550 S.E.2d 398 (2001). Petitioner asserts first that Clarion was aware of the dangers of slippery floors in front of the fryers as evidenced by its previous use of non-slip mats. Second, petitioner argues that the case for actual knowledge is even stronger when one considers that the fryer was unrestrained, despite the warning on the inside of the fryer itself that states "the appliance should not be operated without tipping restraints (if provided) in place." Petitioner contends that Clarion knew that its fryers were not anchored to the floor or to the wall behind them, and Clarion knew the fryer was unrestrained because its workers testified to moving the fryers away from the wall to clean them. Petitioner argues that the case should have gone to the jury.

We disagree with petitioner that he raised sufficient evidence to overcome summary judgment that Clarion had "actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition." W.Va. Code § 23-4-2(d)(2)(ii)(B). "Actual knowledge" is not satisfied merely by evidence that the employer should have known of the specific unsafe condition and of the strong possibility of serious injury or death presented by that condition. *See Blevins v. Beckley Magnetite,* 185 W.Va. 633, 634, 408 S.E.2d 385, 386 (1991). Petitioner argues that a combination of missing floor mats and an unrestrained fryer constitutes actual knowledge by Clarion. First, the lack of mats has no impact because, while a slick floor can be dangerous, there was no evidence in this case that the floor in front of the fryer was actually slick. The employees who worked on the day of Ms. McCreath's injury testified that there was no problem with the floor.

Furthermore, the warning on the door of the fryer does not save petitioner's case because there is no evidence that tipping restraints were provided when the fryer was installed. And, more importantly, a representative of the fryer's manufacturer testified that the Clarion's installation of the fryer in a bank of appliances against a wall was "adequate means" to "limit the movement" of the fryer. The evidence revealed that anchor straps were required if the fryer was installed as a "single appliance," which was not the case here. Petitioner is attempting to turn a negligence claim into a deliberate intention claim, and we believe summary judgment was proper. *See Sedgmer v. McElroy,* 220 W.Va. 66, 640 S.E.2d 129 (2006).

In his second assignment of error, petitioner argues that Clarion should be barred from denying actual knowledge of the hazards in its kitchen based on our decision in *Ryan v. Clonch,* 219 W.Va. 664, 639 S.E.2d 756 (2006), and Clarion's failure to perform a hazard assessment

5

pursuant to 29 C.F.R. § 1910.132(d). However, we see no error in the circuit court's conclusion that the requirement for a hazard assessment in the federal regulation is in the context of determining what personal protective equipment is needed for a job, including protection for eyes, face, head and extremities, as well as protective clothing, respiratory devices, and protective shields and barriers. In this case, the lack of personal protective equipment played no role in the accident. Petitioner's expert testified that personal protective equipment is not required to operate a deep fryer. We note, as the circuit court did, that even OSHA did not believe the regulation was applicable to the accident.

*Ryan* involved an employer who did nothing to determine if personal protective equipment was necessary for the job at issue in that case. In this case, despite the circuit court's determination that no formal hazard assessment was required, the evidence revealed that Clarion's supervisors and employees looked for hazards in the kitchen on a daily basis, including checking the fryers for problems. Therefore, our reasoning in *Ryan* is not applicable in the context of this case.

Moreover, in a recent decision, *McComas v. ACF Industries, LLC,* --- S.E.2d ----, 2013 WL 5814142, W.Va., October 17, 2013 (No. 12-0548), we reversed a grant of summary judgment to an employer on the basis that the circuit court found that had the hazard assessment been completed, the injury would have been avoided. In the present case, there is no evidence that a formal hazard assessment would have prevented the fryer from flipping over. Accordingly, we do not believe the circuit court erred by refusing to bar Clarion from denying "actual knowledge" of an alleged unsafe condition based on the lack of a formal hazard assessment regarding the fryer.

Third, petitioner argues that the circuit court misconstrued federal safety standards in its determination that an unrestrained fryer with no slip-resistant mats did not constitute a violation thereof, and that the circuit court over-emphasized OSHA's failure to cite Clarion following the incident. Specifically, petitioner argues that an unrestrained fryer violated 29 C.F.R. § 1910.212(b); that the lack of slip-resistant mats violated 29 C.F.R. § 1910.22(a)(2); and the lack of hazard assessment violated 29 C.F.R. § 1910.132. Petitioner also argues that pursuant to West Virginia Code § 23-4-2(d)(2)(ii)(C), the failure of OSHA to cite Clarion is not dispositive of whether petitioner meets the element; rather, he can prove the violation notwithstanding OSHA's conclusions.

For the reasons stated in the circuit court's summary judgment order, as discussed above, we do not believe the circuit court erred in determining that the three regulations cited by petitioner are inapplicable to the present case. As for the impact of OSHA's investigation, despite petitioner's attempt to dismiss OSHA's finding of no violation, this Court has repeatedly emphasized the importance of administrative findings to the deliberate intent analysis. *See Coleman Estate v. R.M. Logging,* 222 W.Va. 357, 664 S.E.2d 698 (2008) (reversing summary judgment for an employer where the employer had been cited for safety violations); *Sias v. W-P Coal Company,* 185 W.Va. 569, 408 S.E.2d 321 (1991) (reversing summary judgment for an employer where the employer had been cited for safety violations); and *Beard v. Beckley Coal Mining Co.,* 183 W.Va. 485, 396 S.E.2d 447 (1990) (holding that the issuance of a citation was "of consequence" in the analysis of the third element for proving deliberate intent).

6

Additionally, the Court has also considered the lack of an administrative citation in the deliberate intent analysis. In *McBee v. U.S. Silica Co.,* 205 W.Va. 211, 215, 517 S.E.2d 308, 312 (1999), involving a United States Mine Safety and Health Administration investigation, this Court stated:

> A review of the record demonstrates that the ladder access opening involved in McBee's accident had been in place since at least 1948. We also note that between 1948 and McBee's accident, Silica was not aware of any falls through the specific ladder access opening on which McBee was injured, or any other ladder access opening in their facility. McBee could produce no witnesses who had complained to a foreman or any other member of Silica's management that the ladder access opening represented an unsafe working condition. [footnote omitted]. *We also note that MSHA did not cite Silica for an unsafe working environment in connection with McBee's accident.*

(Emphasis added). Under our prior decisions, the issuance of or lack of administrative citation is proper evidence in the court's determination of whether the employee meets West Virginia Code § 23-4-2(d)(2)(ii)(C). The circuit court's order does not reflect that it treated the lack of citation as dispositive, as petitioner argues here. To the contrary, the order reflects that the circuit court analyzed, for itself, whether the regulations applied to the incident in this case, and concluded that they did not. We see no error in the circuit court's determination regarding the inapplicability of the regulations or its reference to OSHA's findings in making that determination.

Fourth, petitioner argues that the circuit court erred by finding insufficient evidence that Clarion intentionally exposed Ms. McCreath to the unsafe working condition, as required by West Virginia Code § 23-4-2(d)(2)(ii)(D). Petitioner was required to present "some evidence [] that with conscious awareness of the unsafe working condition . . . an employee was directed to continue working in that same harmful environment." *Ramey v. Contractor Enters.,* 225 W.Va. 424, 431, 693 S.E.2d 789, 796 (2010). The "intentional exposure" element "is not satisfied if the exposure of the employee to the condition was inadvertent or merely negligent." *Sias v. W-P Coal Co.,* 185 W.Va. 569, 575, 408 S.E.2d 321, 327 (1991). This Court has rejected the argument that the opportunity for exposure to an unsafe condition is sufficient to meet this element. *See Tolley v. ACF Industries, Inc.,* 212 W.Va. 548, 575 S.E.2d 158 (2002). The employee must show the employer had a "conscious awareness" of the unsafe condition. *Id.* at 558, 575 S.E.2d at 168.

In the present case, petitioner failed to present evidence that Clarion had a "conscious awareness" that the fryer was unsafe as positioned in a bank of other appliances. Simply stated, petitioner alleged intentional exposure to an unsafe condition where there is no evidence that the condition ever caused an accident in the past. As we agree with the circuit court that petitioner failed to establish "actual knowledge" of an unsafe working condition, we cannot find error in the circuit court's finding that petitioner failed to meet the "intentional exposure" element, as the latter logically depends on the former.

7

In his final assignment of error, petitioner contends that circuit court failed to apply the proper evidentiary presumptions stemming from Clarion's spoliation of the video allegedly showing the condition that led to Ms. McCreath's injury. We agree with Clarion that even with an adverse inference instruction, in light of the evidence, petitioner cannot establish the required elements of his deliberate intent claim. Therefore, in this case, we cannot find that the negative inference instruction regarding the video precluded summary judgment for Clarion.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis
Justice Margaret L. Workman