396 S.E.2d 447

**Robert B. BEARD, Appellant,**

v.

**BECKLEY COAL MINING COMPANY, Appellee.**

**No. 19089.**

Supreme Court of Appeals of West Virginia.

July 25, 1990.

Richard E. Hardison, Beckley, for appellant.

Edward N. Hall, Lexington, for appellee.

PER CURIAM:

This case is before us pursuant to a petition for a writ of error to a final order entered by the Circuit Court of Raleigh County on July 21, 1988. In such order, the circuit court granted summary judgment in favor of the appellee, Beckley Coal Mining Company. The appellant, Robert B. Beard, asserts that the circuit court erred in granting the appellee's motion for summary judgment. We agree, and therefore reverse the circuit court's decision.

The appellant, an employee of Beckley Coal Mining Company, was involved in a mining accident in the appellee's coal mine on October 25, 1983. The appellant was riding in a portal-bus with other employees when the brakes on the bus failed. The portal-bus gained great speed down a hill, failed to negotiate a curve at the bottom of the hill, jumped the track and struck a cement wall. As a result of the forceful impact, the batteries that powered the bus dislodged and struck the appellant's head,

causing a severe head injury.[1]

An investigation as to the cause of the accident was conducted by the Mine Safety and Health Administration (MSHA) and the West Virginia Department of Mines. As a result of the investigation which occurred after the October 25, 1983 accident, MSHA issued a citation against appellee for not having sand in the sanding devices in the portal-bus. West Virginia Department of Mines also issued a violation against the appellee for having inoperative sanding devices on the portal-bus.[2] These devices are used to produce friction and traction on the rails.

The appellant filed a civil action in Raleigh County Circuit Court against Beckley Coal Mining Company[3] on January 10, 1985.[4] One theory on which this suit was premised was that the portal-bus in which the appellant was riding constituted a specific unsafe working condition and that the appellee had a subjective realization and an appreciation of the existence of such unsafe working condition. This theory of liability is derived from West Virginia Code § 23–4–2(c)(2) (1985 Rep.Vol.) and allows an employee to sue his employer if the employee asserts that the employer acted with "deliberate intention."

Another theory of liability asserted against the appellee in the appellant's suit was that of products liability, based on the appellant's belief that the portal-bus had been remanufactured and altered significantly by the appellee. The portal-bus was manufactured by Lee Norse Company, and had been originally designed to operate on a trolley line with cables.[5] The appellee redesigned the portal-bus to operate with batteries because part of the coal mine was not equipped with cables. These batteries were placed in a unit that had been welded to the ceiling of the passenger compartment. According to the appellant, placing these batteries, which weighed 3,888 pounds, inboard, reduced the seating capacity in the bus from seventeen to nine and caused the bus to be grossly overloaded by 2,432 pounds.

Beckley Coal Mining Company filed a motion to dismiss this civil action on January 25, 1985. In a letter opinion dated October 8, 1987, from the presiding judge, the Honorable C. Berkley Lilly, the court informed the parties on the status of the case and made rulings on the merits of the case. The court stated in this letter opinion that when the motion to dismiss was originally filed in this case, the court declined to consider it because there had not

1. In the memorandum order entered in the United States District Court on September 25, 1986, it was reported that the appellant suffered as a result of this accident a fractured clavicle, a fractured left ankle, a cerebral concussion, injuries to the back and right knee and various lacerations, abrasions and contusions.

2. In his brief, the appellant asserts that a "safeguard" had previously been issued against the appellee by MSHA for failure to maintain sand in the sanding devices. In addition, he asserted that after the investigation concerning the October 25, 1983 accident, a "safeguard" was issued against the appellee for not having the batteries in the seating area suitably secured. These alleged "safeguards" were not made a part of the record on appeal. Furthermore, upon a review of the *Code of Federal Regulations,* no reference or explanation is supplied as to the meaning of a safeguard. In its brief, appellee did not refute that these "safeguards" were issued, nor did the appellee provide us with any information regarding the existence or non-existence of a "safeguard". Because an adequate explanation as to the meaning of a "safeguard" was not provided by the appellant, we decline to consid-

er the ramifications such "safeguard" could pose in this case. *See State v. Stewart,* 161 W.Va. 127, 131, 239 S.E.2d 777, 780 (1977).

3. The appellant also sued individual employees of Beckley Coal Mining Company and Lee Norse Company, the manufacturer of the portal-bus. Nevertheless, this appeal concerns only Beckley Coal Mining Company.

4. The appellee removed this action to the United States District Court for the Southern District of West Virginia. According to the appellee, the District Court remanded the case back to the Raleigh County Circuit Court because the manufacturer, Lee Norse Company, failed to join in the removal petition.

5. Lee Norse Company was originally named a defendant in this suit, but this claim was settled in August, 1986, for a nominal fee. According to the appellant, the agreement to settle was due to the fact that it was established that the appellee had altered and/or remade the portal-bus without any guidance, advice or assistance from Lee Norse Company.

been sufficient discovery compiled. As of the date of the letter, however, the court believed that the facts had been sufficiently developed, and decided he would thus rule on the appellee's motion to dismiss. In making his ruling, the court found that since matters outside the motion to dismiss had been raised by the parties and considered by the court, the motion to dismiss would be considered and treated as a motion for summary judgment.[6] The court proceeded to rule that the evidence of the appellant was "clearly insufficient to satisfy the requirements" in his cause of action under West Virginia Code § 23–4–2(c)(2)(ii). Although the appellant had listed in his complaint a separate cause of action against the appellee under a products liability theory, the court did not address such cause of action, but nevertheless granted the motion for summary judgment in favor of the appellee.

The presiding judge, the Honorable C. Berkley Lilly, retired and left office on March 31, 1988. A motion to reconsider had been filed by the appellant on March 29, 1988. According to the appellee, Judge Lilly delayed entry of the final order until his successor, the Honorable Robert J. Ashworth, had an opportunity to review the motion. A final order was then entered by Judge Ashworth on July 21, 1988, which granted judgment to the appellee and dismissed this civil action.

We believe that summary judgment was improperly granted in this case. West Virginia R.Civ.Pro. 56(c) provides, in pertinent part, that summary "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Since the appellant brought suit under W.Va.Code § 23–4–2(c)(2)(ii), it was the appellee's burden to show that there was no genuine.

issue of material fact with regard to requirements of that statute. In order to prevail in a cause of action under that statute, it is necessary to prove:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working conditions and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation. Whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

The evidence available at the time summary judgment was granted included depositions of witnesses and affidavits from individuals who had firsthand or expert knowledge about the circumstances surrounding the accident. The deposition tes-

6. W.Va.R.Civ.Pro. 12(c) provides, in pertinent part:
"If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,...."

timony of Danny Morgan, maintenance superintendent, and Robert Brinegar, the shop foreman, provided background on the rebuilding of the portal-bus. According to their testimony, they designed the rebuild of this portal-bus from the trolley bus to a battery-run bus. As part of the redesign they altered the braking system, changed the motor and speed reducer, and moved the batteries inboard. When Mr. Brinegar and Mr. Morgan made these modifications to the portal-bus, they consulted none of the engineers at the respondent's coal mine, no one from the manufacturer Lee Norse Company, and no one from MSHA or the West Virginia Department of Mines. These modifications were made by the shop crew who worked in the mine, under the supervision of Clinton Murphy. Mr. Brinegar stated that they did test the portal-bus once these modifications were made, but as far as he knew, there was never an actual underground test performed with people in the portal bus. Mr. Brinegar also stated that this was the only piece of equipment on which he and Mr. Morgan had ever made modifications to the braking system.

Harvey Stover, safety committeeman and president of the local union, stated in his deposition that he had received many complaints regarding the safety of the portal-bus from the employees who worked in the section of the mine which used this portal-bus. The employees informed him on several different occasions that the bus had a tendency to wreck or jump the tracks. Mr. Stover also received complaints that the batteries were not secure, and was asked to have them repaired and secured before they harmed someone. Although the portal-bus was put in the shop for repairs after complaints had been lodged, complaints were made again within a few days before the accident on October 25, 1983. The complaints Mr. Stover received before the October 25 wreck were that the batteries in the bus were not secure and that the bus continued to wreck. Mr. Stover stated that he reported these complaints to Mr. Scaggs, appellee's safety director, and that he was sure Mr. Scaggs made the company aware of the reported problems with this portal-bus. In addition, Mr. Stover testified that he had asked a company man not to use this portal-bus a few days before this accident occurred because the bus kept wrecking and the batteries were not properly secured.

Joe Subrick, a mining engineer with mining experience as a shop foreman and mine superintendent, submitted an affidavit in which he offered his opinion regarding the accident involving the appellant. Mr. Subrick stated that the portal-bus in which the appellant was riding "was an unsafe working condition and presented a high degree of risk and a strong probability of serious injury or death...." [7] Mr. Subrick further stated that "the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working conditions." [8]

Finally, Mr. Subrick stated that "the aforesaid unsafe working condition was a violation of a state or federal safety statute, rule or regulation, and/or of a commonly accepted and well-known safety

7. The following reasons were given to substantiate this opinion:
(1) failure to maintain sand for additional braking capacity; (2) conversion of the portal-bus from trolley power to battery power without appropriate engineering and design consultation; (3) placing batteries in the confined passenger area; (4) inadequately securing the batteries; (5) lack of easy access to chain inspection; (6) absence of an additional operator of portal-bus.

8. The following reasons were given to substantiate this opinion:
(1) the respondent and management were aware of the step grade the portal-bus had to negotiate and that this grade called for extreme caution because it presents a clear danger; (2) the respondent should have been aware that sand was not being maintained; (3) the respondent wand management failed to maintain the vehicle in a safe operating condition, which was compounded by the fact that the passengers were in an area of no escape with no control over their own safety; (4) the respondent and management should have known of the danger of an overloaded portal-bus negotiating a steep grade without adequate slowing or stopping controls.

standard within the industry or business of Beckley Coal Mining Company," due to the fact that: (1) sand was not provided on the portal-bus; (2) adequate and ready inspection access to the chain area was not provided; (3) adequate maintenance of man-trip vehicles was not conducted. Mr. Subrick found that it was obvious that the appellant "was severely injured as a direct result of being exposed to the foregoing unsafe working condition."

Rex Haynes, Ph. D., an engineer, stated in a deposition that the portal-bus was grossly overweight, and that as a result of this, the inadequate braking system failed, which rendered the bus uncontrollable and caused it to wreck. Dr. Haynes additionally expressed his opinion that if there had been sand in the sanding devices, there would have been an increase in traction. If this had been so, the portal-bus may not have wrecked.[9]

We find that the preceding evidence was sufficient to show that genuine issues did exist with regard to the five material facts required under the statute. To begin, we find that there was evidence that the portal-bus was a specific unsafe working condition. Joe Subrick stated this fact in his affidavit and provided six reasons to substantiate his opinion. As to (B), whether the respondent had a subjective realization and an appreciation of the existence of this unsafe working condition, we find that a genuine issue existed in light of the testimony contained in Harvey Stover's deposition. Mr. Stover, who was a safety committeeman, explained that he had received numerous complaints about this specific portal-bus. Mr. Stover reported these complaints to the appellee's safety director, Mr. Scaggs, and Mr. Stover stated that he was sure that the company was made aware of the problems with this portal-bus. Actually, Mr. Stover answered affirmatively that a few days before the October 25, 1983 accident, he asked a company man not to use this specific portal-bus because of its tendency to wreck and its unsecured batteries.

With regard to the requirement of (C), that the working condition be a violation of a safety code, or rule or regulation, we find it of consequence that after this accident, MSHA cited the appellee with a violation for not maintaining sand in the sanding devices. The West Virginia Department of Mines issued a citation for the same violation under state law. Although the appellee asserts that the lack of sand in the sanding devices was of no consequence due to total brake failure, appellant's expert offered a differing opinion. Rex Haynes, the appellant's expert, stated that if there had been sand in the sanding devices, there would have been an increase in traction and that if there had been more traction, the accident may not have occurred.

As for (D), there needed to be some proof that even though the appellee had been apprised of this specific unsafe working condition, the appellant continued to be exposed to it. Harvey Stover testified that he had received complaints from employees concerning problems with this specific portal-bus a few days before the accident and had informed a company man about these problems. We find that this evidence creates a genuine issue of fact as to whether the appellant was subjected to the unsafe condition after the appellee had been apprised of the problems.

Finally, under (E) the appellant must have suffered serious injury or death as a result of the specific unsafe working condition. There was evidence that the appellant received serious injuries when this portal-bus wrecked, both from the result of the actual wreck and the fact that the batteries in the passenger compartment dislodged and struck his head.

In its final order, the court found that the appellant failed to satisfy the requirements for the implication of "deliberate intention" required by W.Va.Code § 23–4–2(c)(2)(ii). The court stated that working conditions alleged by the petitioner did not individually or collectively consti-

---

**9.** This evidence was stated in the appellant's brief, but the deposition itself was not made a part of the record on appeal.

tute a specific unsafe working condition; that the appellee had no knowledge of and could not have anticipated that the braking system would fail; and that the violation the appellee was charged with after the accident did not deal specifically with the condition of the braking system of the portal-bus. The court concluded that it had "considered the allegations and evidentiary support to determine whether they were of the quality and weight that reasonable and fair-minded people in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party...."

 The court appeared to base its decision at least in part on a belief that the appellant had failed in his burden of proof. This conclusion has no merit, for the appellant did not carry the responsibility at that time of proving that a jury could return a verdict in his favor. We stated in *Lengyel v. Lint,* 167 W.Va. 272, 280, 280 S.E.2d 66, 71 (1981) that

> [t]he question on a motion for summary judgment is not, ... whether the plaintiff has met the burden of proof on material aspects of his claim. It is, rather, whether a material issue of fact exists on the basis of the factual record developed to that date. The burden on a motion for summary judgment is not upon the non-moving party to show that he has developed facts which would allow him to prevail if his cause was submitted to a jury. The burden is on the moving party to show that there is no genuine issue as to any material fact in the case....

When the court granted summary judgment and dismissed this civil action, both the grounds on which the appellant premised his suit were effectively dismissed. In its decision to dismiss and grant summary judgment, the court discussed the theory of liability derived from W.Va.Code § 23–4–2(c)(2)(ii), but did not address the products liability theory. Although dismissal under this theory was obviously warranted,[10] the court should have considered each of the grounds on which appellant's suit was based. "On a motion for summary judgment all papers

of record and all matters submitted by both parties should be considered by the court." *Aetna Casualty & Surety Co. v. Fed. Ins. Co.,* Syl.Pt. 2, 148 W.Va. 160, 133 S.E.2d 770 (1963).

We believe that upon a review of the evidence, there were genuine issues outstanding as to the material facts in the appellant's case, and that the appellee failed to prove a lack of such genuine issues. We held in syllabus point 3 of *Aetna Casualty & Surety Co. v. Fed. Ins. Co.,* that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Id.* In addition, we have held that "[a] party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party can not prevail under any circumstances." *Aetna,* 148 W.Va. at 171, 133 S.E.2d at 777.

We therefore reverse the court's decision to grant summary judgment and remand this case to the circuit court.

Reversed and remanded.

---

10. West Virginia Code § 23–4–2 (1985) provides that an employer in good standing with Workers' Compensation is immune from suit by an employee, except for liability involving "deliberate intention" under W.Va.Code § 23–4–2(c)(2).