# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Edith R. White, by and through her**
**power of attorney and next friend,**
**Naomi June Hutchinson,**
**Plaintiff Below, Petitioner**

**vs)  No. 16-0577** (Nicholas County 14-C-83)

**James Scott White, Brenda J. White,**
**James Scott White, as administrator of**
**The Estate of Ronald R. White, and**
**Kelli D. White, Premier Bank, Inc., and**
**Monongahela Power Company,**
**Defendants Below, Respondents**

**FILED**

**September 1, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Edith R. White, by and through her power of attorney and next friend, Naomi June Hutchinson, by counsel Thomas K. Fast, appeals the May 12, 2016, "Order Ruling on Defendants' Laches Motions; Dismissing Defendant Kelli D. White; Dismissing Defendant Premier Bank, Inc.; and Dismissing Defendant Monongahela Power Company" entered by the Circuit Court of Nicholas County. Respondents James Scott White; Brenda J. White; and James Scott White, as administrator of the estate of Ronald R. White, by counsel William A. McCourt Jr., filed their response. Respondent Kelli D. White, by counsel Gregory A. Tucker, filed her response. Respondent Premier Bank, Inc., by counsel J. Mark Adkins and Joshua A. Johnson, filed its response.[1] Petitioner filed a reply only to Respondent Kelli D. White.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Esau White died on March 13, 1973, survived by his widow, Edith White. In addition, he was survived by their daughter, Naomi June Hutchinson, who also holds Edith White's power of attorney; their son, John White, who is not a party to this action or the action below; and their

---

[1] There was no response from Monongahela Power Company filed with this Court.

1

son, Ronald R. White. Ronald R. White's Estate and heirs are also respondents in this action.[2] Through Esau White's will, petitioner inherited all of his rights, title, and interest in "one hundred acres by level measurement" situate on the water of Little Beaver Creek, Beaver District, Nicholas County, West Virginia ("the property"). By deed dated May 6, 1974, petitioner conveyed a remainder interest in the full 100 acres of the property to Ronald R. White, under the following language: "The said Edith White hereby reserves unto herself for and during the term of her natural life, a life estate in and to the property herein described and conveyed." That deed was recorded with the Clerk of the County Commission of Nicholas County. Both petitioner and Ronald White lived on the property until November of 2008 when petitioner moved to a nursing home. Ronald White continued to live on the property until his death on August 28, 2012, and after that time his widow, Respondent Brenda J. White, continued to live on the property.

While petitioner and Ronald R. White lived on the property, a farm was continuously operated by him. After Ronald R. White's death, his son, Respondent James Scott White, continued farming operations on the property. As holder of the remainder interest in the property, Ronald R. White executed various deeds and leases with respect to the property, including the following: 1) a 1978 deed executed by Ronald R. White and Brenda White conveying an easement to Respondent Monongahela Power Company across the property for their personal benefit, though petitioner did not sign that conveyance; 2) two oil and gas leases, one in 1980 and another in 2008, to the property, which were also not signed by petitioner; 3) by deed dated February 8, 2012, Ronald R. White and Brenda White conveyed 2.446 acres of the property to Respondent Kelli D. White, which deed expressly reserved unto Ronald R. White a life estate for the use, occupancy, and control of the 2.446 acres; and 4) by deed dated August 15, 2012, Ronald R. White and Brenda White conveyed the entire 100 acre tract, excepting the 2.446 acres previously conveyed to Kelli D. White, to Brenda White, James Scott White, and Kelli D. White, though the deed expressly reserved unto Ronald R. White a life estate in common with Brenda White and James Scott White, for their use, occupancy, and control of the subject real estate. However, by deed dated July 25, 2013, Kelli D. White relinquished her interest in the property and conveyed her interest in all but the 2.446 acres to Brenda White. Following Ronald R. White's death, James Scott White qualified as the administrator of his estate.

By trust deed dated October 26, 2012, Kelli D. White conveyed her interest in the 2.446 acres of the property to secure the Bank of Gassaway on a promissory note in the amount of $125,000. That money was used to build a home situated on the property, and during construction of the same there were no objections by petitioner or Naomi June Hutchinson. Thereafter, Respondent Premier Bank acquired or merged with the Bank of Gassaway. Kelli D. White defaulted on her loan, and by deed dated April 23, 2014, she conveyed her interest in the 2.446 acres to Premier Bank. Kelli D. White does not currently occupy or reside on the 2.446 acres or on any of the property.

On June 24, 2013, petitioner executed a durable power of attorney appointing Naomi June Hutchinson as her power of attorney. No suit was brought against Ronald D. White or the other respondents related to the use of the property until this action was filed in 2014.

---

[2] Respondent Brenda J. White is Ronald White's widow, and Respondents James Scott White and Kelli D. White are Ronald White's children (and petitioner's grandchildren).

According to the circuit court, the following structures exist on the property: 1) petitioner's unoccupied mobile home;[3] 2) a stick-built home built by Ronald R. White in 1985-86, which is occupied by Brenda White; 3) a double-wide mobile home placed on the property in 2006 by James Scott White, which is occupied by James Scott White and his wife, Michelle White; and 4) the stick-built home built by Kelli D. White on the 2.446 acres, which was unoccupied and owned by Premier Bank in May of 2016.

Petitioner filed the underlying action on July 21, 2014, essentially seeking to eject all of the respondents from the property, have them remove and/or destroy all structures and homes on the property, and have them restore the property to its original condition as farm land, as well as seeking to extinguish all leases and easements. Petitioner also sought rent, royalties, and profits arising from respondents' residences on the property, farming operations, and oil and gas leases.

On December 29, 2015, the circuit court entered an order denying a joint motion to dismiss for lack of standing but granting a motion to compel the deposition of petitioner. As part of that order, the circuit court found that while petitioner moved into a nursing home in 2008, she "had the ability to manage property or business affairs by receiving and evaluating information" in 2013.

Respondents filed three motions to dismiss, all based on the doctrines of laches and estoppel, pursuant to Rule 12(b) of the West Virginia Rules of Civil Procedure. On May 12, 2016, the circuit court entered its "Order Ruling on Defendants' Laches Motions; Dismissing Defendant Kelli D. White; Dismissing Defendant Premier Bank, Inc.; and Dismissing Defendant Monongahela Power Company." In its order, the circuit court stated that because the parties relied upon facts outside the pleadings in support of and in opposition to the motions to dismiss, each motion would be treated as one for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure. The circuit court also found that petitioner does not contest the existence of the elements necessary for the application of laches, but she argued that laches is inapplicable and that summary judgment is not appropriate. In considering the parties' arguments, the circuit court stated that it was undisputed that petitioner holds a life estate in the property and that respondents, with the exception of Kelli D. White, each possess the remainder interest. It found that petitioner's life estate in the property would not be affected by the application of the doctrine of laches. It further held that because it is not an action of legal title, laches may apply to petitioner's equitable demands.

Petitioner argued below that summary judgment was not appropriate because there were questions of fact as to the handling of the money from the farm, the sale of the cattle, rentals from use of the land, and additional issues. The circuit court stated that "[w]hile these facts may be disputed, they do not relate to or affect the [circuit c]ourt's ruling on the legal issue of the application of the doctrine of laches." The circuit court considered the elements of laches set forth in *State ex rel. Smith v. Abbot*, 187 W. Va. 261, 264-65, 418 S.E.2d 575, 578-79 (1992),

---

[3] Petitioner asserts that she wanted to return to the mobile home but cannot do so until the steps are returned. However, Respondent Kelli D. White states that it is clear from the record that petitioner cannot return to the mobile home given petitioner's advanced age and incompetency.

and found that the existence of those elements was undisputed. Based on these findings, the circuit court concluded that there were no genuine issues of material fact regarding the application of laches and granted respondents summary judgment as to petitioner's claims for ejectment and damages.

After dismissing a number of the claims in the complaint due to the application of laches, the remaining claims were the following: 1) petitioner's demand for the return of her mobile home steps and personal items or compensation for the same; 2) attorney's fees and costs; and 3) any other relief deemed appropriate by the court. Specifically, petitioner alleged that James Scott White removed the entrance steps to her mobile home, in addition to multiple personal items from inside the mobile home. The circuit court determined that laches did not bar that claim. It also concluded that

> as a life-tenant, [petitioner] has the full right to occupy and use the [p]roperty. Notwithstanding [petitioner's] rights as a life tenant, the White [respondents] may continue to reside in their homes on the [p]roperty, rent free, and the White [respondents] are entitled to unrestricted ingress and egress to their residences and reasonable enjoyment of the property surrounding their residences. Similarly, the home owned by [respondent] Premier Bank on the 2.446 acres of the [p]roperty may remain and may be reasonably maintained by [respondent] Premier Bank or its agents or employees. However, for the remainder of [petitioner's] life-tenancy, [respondent] Premier Bank may not permit anyone to occupy the home on the 2.446 acres without paying reasonable rent to [petitioner].

In addition to those findings, the circuit court held that all claims against Kelli D. White are barred by the doctrine of laches and are also moot due to the fact that she has no possessory or ownership interest in any of the property. She was, therefore, dismissed from the underlying case. Petitioner's sole claim against respondent Monongahela Power Company for extinguishment of the easement was also barred by the doctrine of laches, so it was dismissed from the matter. The claims against Premier Bank were also barred by the doctrine of laches, and it was dismissed from the case. However, the circuit court specifically held that Premier Bank's right, title, and interest in the 2.446 acres of the property is subject to petitioner's life estate. Thereafter, the circuit court granted, in part, the White Respondents' motion to dismiss pursuant to the doctrine of laches; granted Kelli D. White's motion to dismiss pursuant to laches and estoppel; granted Premier Bank's motion to dismiss or, in the alternative, motion for summary judgment pursuant to laches and estoppel; and dismissed Monongahela Power Company, Kelli D. White, and Premier Bank.

"We review a circuit court's summary judgment order *de novo.* Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." *Chesapeake Appalachia, L.L.C. v. Hickman,* 236 W. Va. 421, 434, 781 S.E.2d 198, 211 (2015). Further,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

4

Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). As we have also explained,

> [r]oughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

Syl. Pt. 5, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1995).

> Stated another way, "[i]f the evidence favoring the nonmoving party is 'merely colorable . . . or is not significantly probative'" a genuine issue does not arise, and summary judgment is appropriate. *Williams* [*v. Precision Coil, Inc.*]*,* 194 W.Va. [52,] at 60-61, 459 S.E.2d [329,] at 337-38 (quoting *Anderson* [*v. Liberty Lobby, Inc.*]*,* 477 U.S. [242,] at 249-50, 106 S.Ct. [2505,] at 2511 (citations omitted in original)).

*Jividen*, 194 W. Va. at 713-14, 461 S.E.2d at 459-60.

On appeal, petitioner asserts two assignments of error: 1) the circuit court erred by applying an equity claim, laches, to purely legal claims, and in so doing nullifying petitioner's life estate rights; and 2) the circuit court erred by granting respondents' motions as motions for summary judgment when there were material issues of fact.

With regard to petitioner's claim that the circuit court should not have applied equity considerations to purely legal claims, she argues that a legal title of a life estate is a legal issue rather than an equitable one. She admits that she gave permission to her son and grandson to place residences on the property, but she argues that she has the right to revoke that permission pursuant to *Pifer v. Brown*, 43 W. Va. 412, 27 S.E. 399 (1897).

"[A]s this Court has suggested many times, laches is an equitable doctrine based on the maxim that equity aids the vigilant, not those who slumber on their rights." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996) (internal citations omitted). The elements of laches consist of (1) unreasonable delay and (2) prejudice. *See State, Dept. of Health and Human Resources, Child Advocate office on Behalf of Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 466 S.E.2d 827 (1995). "The burden of proving unreasonable delay and prejudice is upon the litigant seeking relief. No rigid rule can be laid down as to what delay will constitute prejudice; every claim must depend upon its own circumstances." *Province*, 196 W. Va. at 484, 473 S.E.2d at 905. However, we have also stated that

> "[w]here a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may

5

come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." Carter v. Price, 85 W.Va. 744, 102 S.E. 685 (1920), Syllabus Point 3.

Syl. Pt. 2, *Mundy v. Arcuri*, 165 W. Va. 128, 267 S.E.2d 454 (1980).

Respondent Kelli D. White asserts that the circuit court's order applies laches to petitioner's claim of ejectment rather than to petitioner's legal title, and the White Respondents simply agree with her. Respondent Premier Bank similarly argues that the circuit court appropriately focused on petitioner's specific requested relief to find that laches applied. As this Court previously set forth,

the character of the case, the situation of the parties, the nature of the relief sought, and whether the rights of third parties have been innocently acquired, should be considered in determining whether the delay is unreasonable and justifies application of the equitable doctrine of laches; and what constitutes laches depends upon the facts and the circumstances of each particular case." Syl. pt. 6, *Herzog v. Fox,* 141 W.Va. 849, 93 S.E.2d 239 (1956).

Syl. Pt. 5, in part, *White v. Manchin*, 173 W. Va. 526, 318 S.E.2d 470 (1984).

In petitioner's amended complaint, she specifically requests that respondents be ejected from the property; that all respondents be ordered to remove all structures, mobile homes, or buildings installed, parked, or built upon the property; and the payment of rent, royalties, and profits from the time various respondents built or installed those structures on the property. She makes those requests in spite of her admission that she gave her son and grandson express permission to build or place those structures on the property with full knowledge that she maintained a life estate in the property. Further, she does not appear to dispute respondent Kelli D. White's contention that she also received permission from petitioner to build a residence on the property. Based upon the specific facts of this case, particularly petitioner's requested relief and her long-standing permission to place the structures and items at issue on the property, we find that the circuit court did not err in applying the doctrine of laches to petitioner's claims.

Petitioner's second assignment of error is that the circuit court ignored genuine issues of material fact that preclude summary judgment. Petitioner's argument on this point is very short, and she cites only one case, which stands for the general proposition that if there is a genuine issue to be tried the motion for summary judgment shall be denied and the case allowed to proceed to trial. *See* Syl. Pt. 2, *Beard v. Beckley Coal Mining Co.*, 183 W. Va. 485, 396 S.E.2d 447 (1990). She points to what she contends are competing affidavits and the differences in the factual assertions by the parties. However, petitioner does not deny giving her family member respondents permission to live and build on the farm.

As we set forth in one of our leading cases regarding summary judgment,

6

[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). Further,

"[t]he evidence must contradict the showing of the moving party by pointing to specific facts demonstrating that, indeed, there is a "trialworthy" issue. A "trialworthy" issue requires not only a "genuine" issue but also an issue that involves a "material" fact. *See Anderson* [*v. Liberty Lobby*]*,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

*Williams*, 194 W. Va. at 60, 459 S.E.2d at 337.

As the circuit court found, "[w]hile these facts may be disputed, they do not relate to or affect the [circuit c]ourt's ruling on the legal issue of the application of the doctrine of laches." We agree. There appears to be no dispute that respondent Kelli D. White is not in possession of any of the property at issue; further, she did not farm or take any subsidies for the property. Therefore, we find that the circuit court did not err in granting summary judgment to Respondent Kelli D. White. With regard to the other individual respondents, petitioner permitted these respondents to construct homes on the property and live rent-free thereon until initiating the underlying civil action. Therefore, her requests for rent, royalties, and profits from these respondents were properly dismissed by the circuit court. The same is true for her claims for ejectment; the removal of the structures respondents placed upon the property; rent, royalties, and profits related to the property and the oil and gas leases at issue; for the sale, use, and depletion of farm equipment and sales of cattle; and the extinguishment and termination of easements over, upon, across, or under the property. Finally, petitioner does not point to any alleged genuine issues of material fact related to either of the corporate respondents. In addition, Respondent Premier Bank points out, and petitioner does not contest, that she took no action to eject any party from the property for a period of approximately forty years.

For these reasons, we find no error in the circuit court's grant of summary judgment to respondents.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 1, 2017

7

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker


**DISQUALIFIED:**

Justice Robin Jean Davis