**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**May 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Christina R. Layman, Administratrix of the**
**Estate of Fred A. Layman, Jr.,**
**Plaintiff Below, Petitioner**

**vs.)  No. 19-0987** (Marion County 18-C-17)

**Ronald Lane, Inc.,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Christina R. Layman, Administratrix of the Estate of Fred A. Layman, Jr., by counsel Robert B. Warner, Andrew D. Byrd, Rodney C. Windom, and Scott A. Windom, appeals the order of the Circuit Court of Marion County, entered on September 27, 2019, granting Respondent Ronald Lane, Inc.'s motion for summary judgment in the deliberate intention action that Ms. Layman filed in response to the death of her husband. Respondent appears by counsel Charles R. Bailey, Jordan K. Herrick, and Brent D. Benjamin.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

In 2016, Fred A. Layman, Jr., an employee of the pipeline construction and maintenance corporation Ronald Lane, Inc., was killed at his worksite when struck in the head by a pipe propelled from a valve that he was closing during a "pigging" operation to clean a natural gas pipeline.[1] Ronald Lane, Inc., was performing contract work for the pipeline owners. Mr. Layman, who was trained in pipeline pressure testing, was Ronald Lane, Inc.'s receiver station foreman for this operation. He was assisted at the receiver station by another Ronald Lane, Inc., employee. A pipeline employee also was present at that station. The lead/launcher station foreman for this

---

[1]For such an operation, spherical or cylindrical "pigs"—in this case, made of rubber-coated polyurethane foam—are propelled through a natural gas pipeline to remove debris.

operation was working at the launcher station three miles away. Prior to beginning the pigging operation, the launching and receiving employees met for a job safety analysis meeting and discussed the potential for "flying debris."

Before pigging began, a pipeline employee added a three-foot extension pipe with a 90-degree elbow ("the elbowed extension pipe") on the front vent valve assembly at the receiver station. Pipeline employees also controlled a bypass line that was designed and installed by employees of the pipeline, created for routing liquid away from the system's receiver barrel and into a separation tank. The bypass line was always closed and locked out. In a later investigation of the fatal accident, the Occupational Safety and Health Administration ("OSHA") determined that because the bypass line was always closed, "there was no method for employees to measure pressure and there was no overpressure protection for the pig receiver."

Ronald Lane, Inc.'s "Pig Receiving Procedures" provide that the company's onsite operator should "[f]ully open the bypass valve" when pigging. The same safety policy document setting forth that procedure cautions employees that "fittings, such as elbows in piping systems . . . can contribute to pressure variation as the pig passes through the piping. Forces associated with those pressure changes can . . . cause movement and ruptures in connections and piping."

The group successfully completed a pigging run the day prior to Mr. Layman's death, and the pipeline employee at the receiver station removed the elbowed extension pipe and placed a cap on the vent valve. The group returned the following day, and the pipeline employee replaced the elbowed extension pipe. A three-foot extension pipe without an elbow was placed on the back vent valve. On the first attempted run of this day, the pigs broke apart. The pigs arrived intact for the following run, and the receiver station workers were to close the venting valves. Mr. Layman, at the front vent valve (where the elbowed extension pipe had been placed), was closing his valve when the threaded assembly failed and the pipe was thrust toward him, striking him on the forehead. Mr. Layman died at the site.

Petitioner Christina Layman, Mr. Layman's widow and the administratrix of his estate, filed a complaint in the Circuit Court of Marion County in 2018. Several defendants were named in that complaint, but as to Ronald Lane, Inc. (the only respondent to this appeal), the sole cause of action asserted was that the company acted with deliberate intention in causing the death of Mr. Layman. This action is thus governed by West Virginia Code § 23-4-2, the "deliberate intention" statute, which provides the formula under which an employer loses the immunity afforded to employers who carry workers' compensation insurance. A plaintiff claiming liability under that statute must prove that there was a specific unsafe condition in the workplace which presented a high degree of risk and a strong probability of serious injury or death; that the employer had actual knowledge of the unsafe working condition; that the unsafe working condition was a violation of a state or federal safety statute, rule, regulation, or of a commonly accepted and well-known industry safety standard; that the persons alleged to have actual knowledge nevertheless subjected the employee to the specific unsafe working condition; and that the exposed employee suffered serious compensable injury or death. *See id.*

After the conclusion of discovery, Ronald Lane, Inc., filed a motion for summary judgment arguing that Ms. Layman failed to produce evidence supporting the factors required for application

2

of the deliberate intention statute. The circuit court granted the motion, by order entered on September 27, 2019, specifically finding that Ms. Layman presented no evidence that Ronald Lane, Inc., "had actual knowledge of the existence of any specific unsafe working condition and that such condition posed a high degree of risk and the strong possibility of serious injury or death to Mr. Layman."

II.

Ms. Layman appeals the circuit court's order, asserting the following assignments of error: first, that the circuit court erred in granting Ronald Lane, Inc's motion for summary judgment because there are genuine issues of material fact concerning Ronald Lane, Inc.'s actual knowledge of a specific unsafe working condition; second, that the circuit court improperly weighed the evidence and misapplied the deliberate intention statute; third, that the circuit court afforded inappropriate weight to the finding that an OSHA investigation absolved Ronald Lane, Inc., of fault; and, fourth, that the granting of summary judgment was premature because further discovery was needed. Because this matter is before us on the grant of a motion for summary judgment, we apply a de novo standard of review to these assignments of error. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

III.

A.

Ms. Layman's first assignment of error implicates an issue crucial to the survival of her cause of action: Ronald Lane, Inc.'s actual knowledge of a specific unsafe working condition. Ms. Layman must prove this element to prevail under the deliberate intention statute. This issue is intertwined with the argument presented in Ms. Layman's second assignment of error, wherein she contends that the circuit court's interpretation of "actual knowledge" was unduly limiting. The crux of these assignments of error as presented by Ms. Layman is that there are genuine issues of material fact that should have precluded the grant of summary judgment. We disagree. Ms. Layman failed to demonstrate the factors necessary for application of the deliberate intention statute, and we particularly note the lack of evidence of actual knowledge by any supervisory or managerial employee of Ronald Lane, Inc.

Ms. Layman's theory of liability is premised on her assertion that three failures ultimately caused Mr. Layman's death: the absence of a site-specific safety plan, the lockout of the bypass line, and the use of the elbowed extension pipe. But Ms. Layman failed to establish that Ronald Lane, Inc.'s management or supervisors had actual knowledge of the bypass line lockout or the use of the elbowed extension pipe.

During discovery, Ronald Lane, Inc.'s vice-president testified that a site-specific safety plan should have been distributed to all employees working on the job, and that it would have been a violation of the company's internal safety policies and procedures if that were not done. The company's safety director testified that no site-specific plan was developed prior to this pigging operation, and the launching foreman testified that he did not receive a site-specific plan. The launching station foreman testified that a site-specific plan would have revealed to the workers

that the bypass valve was locked out. However, the company's vice-president, safety director, and launching station foreman all testified that any hazards that could have been identified were addressed in the job safety analysis meeting. Importantly, Ms. Layman has not identified a statute, rule, or regulation that requires an employer to develop a site-specific safety plan, and she did not present evidence that the development of a site-specific safety plan was a commonly accepted and well-known safety standard within the industry.

The primary importance of a site-specific safety plan, following Ms. Layman's logic, is that the development of such a plan would have revealed the bypass line lockout and the planned use of the elbowed extension pipe. This is where she argues that the circuit court failed to interpret "actual knowledge" expansively. Ronald Lane, Inc., has actual knowledge, she persists, because Ronald Lane, Inc., actively eschewed forming the revelatory plan. But the statute instructs otherwise. "Actual knowledge is not established by proof of what an employee's immediate supervisor or management personnel should have known had they exercised reasonable care or been more diligent." W. Va. Code § 23-4-2(2)(B)(ii)(II). We find, therefore, that the circuit court did not err in concluding that Ms. Layman failed to establish that Ronald Lane, Inc., had actual knowledge of a specific unsafe working condition that endangered Mr. Layman.

B.

We turn to Ms. Layman's third assignment of error, in which she argues that the circuit court's grant of summary judgment was inappropriately influenced by the outcome of the OSHA investigation of the incident that led to Mr. Layman's death. Ronald Lane, Inc., received no citation when OSHA completed its investigation. The OSHA report noted that Ronald Lane, Inc., employees were trained and experienced and undertook the necessary precautions. OSHA found:

> No additional type of [personal protective equipment] or procedure would have prevented the incident. The position of the employee would not have been a factor as the direction of the failure of the valve assembly could not have been predetermined. No evidence could be found that Ronald Lane, Inc., knew of any issues related to this valve assembly or could have foreseen the failure. The valve assembly performed as needed during the initial pressure test, during the three years of continuous service under pressure, and during the several previous pigging operations.

OSHA specifically found that there was no indication of a problem with the valve assembly until it failed, and that pipe inspection is not an expected function of a pigging operator unless there is an apparent problem.

Though Ms. Layman attempts to paint the circuit court's extensive references to the OSHA investigation determination as error, this Court has repeatedly emphasized the importance of administrative findings to the deliberate intention analysis. *See Coleman Estate v. R.M. Logging*, 222 W. Va. 357, 664 S.E.2d 698 (2008) (reversing summary judgment for an employer where the employer had been cited for safety violations); *Sias v. W-P Coal Co.*, 185 W. Va. 569, 408 S.E.2d 321 (1991) (reversing summary judgment for an employer where the employer had been cited for safety violations); and *Beard v. Beckley Coal Mining Co.*, 183 W. Va. 485, 396 S.E.2d 447 (1990)

4

(holding that the issuance of a citation was "of consequence" in the analysis of the third element for proving deliberate intent). In contrast, this Court has also considered the lack of an administrative citation in the deliberate intent analysis. *See McBee v. U.S. Silica Co*., 205 W. Va. 211, 215, 517 S.E.2d 308, 312 (1999). Our prior decisions establish that the issuance of or lack of administrative citation is proper evidence in the court's determination of whether a plaintiff meets the criteria for application of the deliberate intention statute. Contrary to Ms. Layman's argument, the circuit court's order does not indicate an improper degree of reliance that would effectively render the OSHA determination dispositive. The circuit court did not err in considering OSHA's conclusions.

C.

In her final assignment of error, Ms. Layman argues that she requested and was granted extension of time to complete a deposition pursuant to Rule 30(b)(6) of the West Virginia Rules of Civil Procedure[2], but that the circuit court granted Ronald Lane, Inc.'s motion for summary judgment before the extension ended. Ms. Layman made her request after Ronald Lane, Inc., filed its motion for summary judgment. Ms. Layman argues that Ronald Lane, Inc.'s counsel incorrectly informed the circuit court at the hearing on summary judgment that "the factual discovery has been finished. . . ." while Ms. Layman urged the circuit court to hold the summary judgment motion in abeyance. The appendix record on appeal reflects that Ms. Layman's counsel briefly referred to the planned 30(b)(6) deposition, but did not directly correct Ronald Lane, Inc.'s counsel's statement that discovery was complete. Ms. Layman's counsel was equivocal:

> If I represent to you, Your Honor, right here that we have until October 1st to complete discovery and there are outstanding issues, I don't have to submit an affidavit. . . .
>
> But aside from that, Your Honor, not only do we believe that we have proven deliberate intent in this case, we can [at] the minimum establish[] there's genuine issue[s] of material fact. . .

When counsel concluded his argument to the circuit court at the summary judgment hearing, he did not pursue abeyance but instead said, "[A]nd that's why the motion for summary judgment should be denied." Soon after, when the circuit court advised the parties that it would "put together a decision . . . as soon as" it could and invited the submission of proposed findings of fact and conclusions of law, Ms. Layman's counsel remained silent. Ms. Layman made no attempt to convey her need for additional discovery at the summary judgment hearing. And, perhaps more importantly, she has not adequately explained the need to this Court. She makes no attempt to describe the evidence that she expected to develop in the 30(b)(6) deposition and argues, without presenting underlying factual bases, that the grant of summary judgment was precipitous. The conclusory argument is insufficient to present a reviewable issue.

---

[2]That rule provides: "The notice to a party deponent may be accompanied by a request made in compliance with Rule 34 for the production of documents and tangible things at the taking of the deposition. . . ."

"Where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to W. Va.R.Civ.P. 56(f) and obtain a ruling thereon by the trial court. Such affidavit and ruling thereon, or other evidence that the question of a premature summary judgment motion was presented to and decided by the trial court, must be included in the appellate record to preserve the error for review by this Court." Syl. Pt. 3, *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987).

Syl. Pt. 4, *Harbaugh v. Coffinbarger*, 209 W. Va. 57, 543 S.E.2d 338 (2000). We conclude that the circuit court did not err in deciding the summary judgment motion when it did.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

6